**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| AE LIQUIDATION, INC., et al., | ) |
| | ) Case No. 08-13031 (MFW) |
| Debtor. | ) |
| ———————————————————— | ) Jointly Administered |
| ANNETTE VARELA and JOHN J. DIMURA on behalf of themselves and all others similarly situated, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) Adv. No. 09-50265 (MFW) |
| | ) |
| | ) |
| ECLIPSE AVIATION CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |

<u>**MEMORANDUM OPINION**</u>[1]

Before the Court are cross-motions for summary judgment on claims arising under the federal Worker Adjustment and Retraining Notification Act (the "WARN Act").[2]  The issue presented is whether Eclipse can invoke the "faltering company" or "unforeseeable business circumstances" exceptions to the WARN Act.  The Court concludes that the unforeseeable business circumstances exception applies and, therefore, will grant the Trustee's motion and deny the Plaintiffs' motion.

---

[1]  This opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2]  The Plaintiffs concede their New York WARN Act claims are not valid because Eclipse is not an "employer" under the NY WARN regulations.

I.   <u>BACKGROUND</u>

The material facts of this case are undisputed.  The Plaintiffs were employed by Eclipse Aviation Corporation ("Eclipse").  Eclipse engineered, manufactured, and sold jet aircraft through its facilities in Albuquerque, New Mexico.  European Technology and Investment Research Center ("ETIRC") was the largest shareholder of Eclipse, and its Chairman, Roel Pieper, was also Eclipse's Chairman and Chief Executive Officer.

Pre-petition, the business model of Eclipse failed.  By November 1, 2008, the company had defaulted on its secured notes and its cash accounts were frozen.  (Pls.' App. at A57.)  J. Mark Borseth, Eclipse's Chief Financial Officer, suggested a bankruptcy filing to its Board of Directors.  The Board considered liquidating, but decided on a going-concern sale through "stalking horse" bid procedures.  On November 25, Eclipse filed a chapter 11 petition with $20 million in debtor-in-possession (DIP) financing provided by ETIRC.  (D.I. 13.)

ETIRC emerged as the stalking horse bidder, representing that a Russian state-owned bank (Vnesheconombank) would finance the sale.  These and other terms were memorialized in an Amended Asset Purchase Agreement (the "APA") between Eclipse and EclipseJet Aviation International, Inc., an affiliate of ETIRC.  (D.I. 446, Ex. 1.)  On January 23, 2009, the Court entered an order approving the sale.

Despite its approval, ETIRC's financing, and the closing, were delayed.  On February 18, Eclipse sent an email to employees announcing a furlough:

> The efforts of many people to finalize the sale of Eclipse to EclipseJet is still on course but slower than we all had hoped for. . . .[T]he Board of Directors directed management to furlough essentially all of the company's employees effective today. . . . You will be contacted at your home address and/or by home phone to notify you when to return to your job or to provide any additional updates.

(Pls.' App. at A219.)

Despite repeated assurances from ETIRC that funding was forthcoming, the sale ultimately did not close.  On February 24, management sent a second message to employees:

> We are very sad to report unexpected news today. Despite the efforts of many people at EclipseJet Aviation and ETIRC to obtain necessary funding to close the purchase of the assets of Eclipse Aviation, the closing of the sale has stalled and our company is out of time and money.  Given the dire circumstances in today's global marketplace and the lack of additional debtor-in-possession funding, the senior secured creditors of the Company filed a motion today. . .to convert the Chapter 11 case to a Chapter 7 liquidation. This action, under the circumstances, is being supported by the directors of Eclipse.
>
> What does this mean for each employee?  The furlough converted to a layoff effective Thursday, February 19, 2009.  Most regrettably, you will not be paid the paycheck due on Thursday, March 5, 2009 nor is any vacation pay available.  You may have certain rights to seek payment in the bankruptcy proceeding; you may receive additional information about that from the bankruptcy court.

(Trustee's Answering Brief at 31.)  On February 25, a termination benefits package was mailed to the employees.  On March 5, the

Court converted Eclipse's case to chapter 7 and subsequently appointed Jeoffrey L. Burtch as trustee (the "Trustee").

The Plaintiffs commenced a class action adversary proceeding on March 3, 2009, alleging a violation of the federal WARN Act. On February 14, 2014, the Plaintiffs filed a Motion for Partial Summary Judgment, arguing that Eclipse cannot invoke the "faltering company" or "unforeseeable business circumstances" defenses. On April 24, 2014, the Trustee filed a cross-motion for summary judgment on the unforeseeable business circumstances defense.

II. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter affects the bankruptcy claims administrative process and is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), & (O). See In re Jamesway Corp., 235 B.R. 329 (1999).

III. DISCUSSION

   A.   Summary Judgment

Summary judgment is proper if there is no genuine dispute over any material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

4

Fed. R. Bankr. P. 7056.  <u>See also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The movant bears the burden of establishing that no genuine dispute as to any material fact exists.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585 n. 10 (1986). A fact is material when it could "affect the outcome of the suit."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  Once the moving party establishes a prima facie case in its favor, the opposing party must go beyond the pleadings and identify specific facts showing more than a scintilla of evidence that a genuine dispute of material fact exists.  <u>See, e.g.</u>, <u>Anderson</u>, 477 U.S. at 252; <u>Matsushita</u>, 475 U.S. at 585-86; <u>Michaels v. New Jersey</u>, 222 F.3d 118, 121 (3d Cir. 2000).

The filing of cross-motions for summary judgment does not alter the Court's analysis.  "The [C]ourt must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure, § 2720, at 23 (1983).  <u>See also</u> <u>Wells Fargo Bank, N.A. v. Am. Home Mortgage Inv. Corp.  (In re Am. Home Mortg., Inc.)</u>, No. 07-51741, 2008 WL 4753342, at *3-4 (Bankr. D. Del. 2008).

B.   Federal WARN Act

Under the federal WARN Act, an employer cannot order a plant closing or mass layoff without giving 60 days' written notice to affected employees.  29 U.S.C. § 2102(a)(1).  The purpose of this requirement is to allow workers the opportunity "to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow [them] to successfully compete in the job market."  20 C.F.R. § 639.1(a).

It is undisputed that Eclipse did not provide employees with notice 60 days prior to termination.  Eclipse sent an email announcing a furlough on February 18, 2009, and a second email on February 24, retroactively converting the furlough to a layoff. Any notice, therefore, was given after-the-fact.

The Trustee, however, argues that the WARN Act's statutory exceptions apply.  Under the WARN Act, two relevant exceptions permit less than 60 days' notice: the faltering company exception and the unforeseeable business circumstances exception.  To qualify for either, an employer must give as much notice as is practicable and, at that time, provide a brief statement explaining the reason for the shortened notice period.  29 U.S.C. § 2102(b)(3).  The burden is on the employer to show that a statutory exception applies.  See In re Advanced Accessory Systems, LLC, 443 B.R. 756 (2011) (holding that former employer

6

met its burden of proof that the unforseeable business

circumstances exception applied).

          1.   <u>Faltering Company Defense</u>

The faltering company defense provides:

> An employer may order the shutdown of a single site of
> employment before the conclusion of the 60-day period
> if as of the time that notice would have been required
> the employer was actively seeking capital or business
> which, if obtained, would have enabled the employer to
> avoid or postpone the shutdown and the employer
> reasonably and in good faith believed that giving the
> notice required would have precluded the employer from
> obtaining the needed capital or business.

29 U.S.C. § 2102(b)(1).

Department of Labor regulations clarify that there are four

requirements for invoking this defense.  The employer must

demonstrate: (1) it was actively seeking capital at the time the

60-day notice would have been required, (2) it had a realistic

opportunity to obtain the financing sought, (3) the financing

would have been sufficient, if obtained, to enable the employer

to avoid or postpone the shutdown, and (4) the employer

reasonably and in good faith believed that sending the 60-day

notice would have precluded it from obtaining the financing.  <u>In

re APA Transp. Corp. Consol. Litig.</u>, 541 F.3d 233, 246-47 (3d

Cir. 2008) (summarizing 20 C.F.R. § 639.9(a)(1)-(4)).

The Trustee falls short of meeting the requirements of the

faltering company defense.  Importantly, Eclipse was not

"actively seeking capital" on December 26, 2008, which is when

notice would have been required.  At that time, Eclipse had signed the APA with ETIRC's acquisition entity and was seeking additional bids for a going-concern sale.  The regulations describe "actively seeking capital" as pursuing "financing or refinancing through the arrangement of loans, the issuance of stocks, bonds, or other methods of internally generated financing," or "seeking additional money, credit, or business through any other commercially reasonable method."  20 C.F.R. § 639.9(a)(1).  Case law makes clear that a sale of the business does not meet this definition.  Law v. Am. Capital Strategies, Ltd., CIV. 3:05-0836, 2007 WL 221671 at *10 (M.D. Tenn. 2007) ("This Court concludes that [the faltering company] exception is inapplicable where, as here, the closings and/or layoffs occur as a result of a failed business sale."); Local 397, Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Midwest Fasteners, Inc., 763 F. Supp.78 (D.N.J. 1990) (negotiating the sale of a company does not qualify as "actively seeking capital").

        2.    Unforeseen Business Circumstances Defense

    The Trustee further argues that the WARN Act's unforeseeable business circumstances defense applies.  An employer can avoid a WARN Act violation where a closing was caused by "business circumstances that were not reasonably foreseeable" 60 days in advance and within a particular 14-day period.  Hotel Employees &

8

<u>Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.</u>,
173 F.3d 175, 184-85 (3d Cir. 1999) (reading 20 C.F.R. § 639.7(b)
and § 639.9(b) together).  To invoke this defense, the employer
must show that: 1) the claimed circumstance was unforeseeable,
and 2) the layoffs were caused by that circumstance.  <u>Gross v.
Hale-Halsell Company</u>, 554 F.3d 870, 875 (10th Cir. 2009).  Unlike
the faltering company defense, the regulations do not suggest
that this exception should be narrowly construed.  <u>In re Jevic
Holding Corp.</u>, 496 B.R. 151, 163 n.36 (Bankr. D. Del. 2013).

       a.   <u>Foreseeability</u>

Deciding what qualifies as unforeseeable is a fact-intensive
inquiry.  The regulations do not offer examples of circumstances
that are per se unforeseeable.  However, an important indication
of such circumstances is a "sudden, dramatic, and unexpected
action or condition outside of the employer's control."  20
C.F.R. § 639.9(b)(1).

The test is an objective one: "When determining whether a
closing was caused by unforeseeable business circumstances, we
evaluate whether a 'similarly situated employer' in the exercise
of commercially reasonable business judgment would have foreseen
the closing."  <u>Elsinore Shore Assocs.</u>, 173 F.3d at 186 (quoting
20 C.F.R. § 639.9(b)(2)).  In  <u>Elsinore Shore Assocs.</u>, the Court
concluded that it was not reasonably foreseeable that the
government would revoke a casino's license for not maintaining

9

adequate cash reserves.  Although the casino was "not without notice" that the Casino Control Commission might take action, the decision could have come "earlier or considerably later in time or not at all." Id.  Thus, at the time notice would have been required, the Court found that the casino could not have anticipated a particular date or 14-day period when layoffs might occur.

In Jevic Holding, the Court held that a lender's refusal to forbear was reasonably unforeseeable.  There, as here, the employer had been struggling financially for some time, and had also considered a section 363 sale or liquidation among the options for dealing with its financial problems.  However, based on projections from its consultants, the employer reasonably expected that it could stay afloat by meeting the requirements of its lending agreement and avoiding default.  Further, its lender had "repeatedly agreed to extend forbearances" before finally terminating the credit facility.  Jevic Holding, 496 B.R. at 162.

In this case, the Trustee has shown that ETIRC's failure to close on the sale of Eclipse was not reasonably foreseeable as of December 28, 2008, 60 days before employees received notice of termination.  The following month, in January 2009, the Court held a hearing on the proposed sale.  At that time, Mr. Pieper testified that ETIRC had lined up the necessary financing commitments and that, aside from the entry of a sale order, there

were no contingencies in connection with the purchase.  (D.I. 448 at 112.)  On February 3, Mr. Pieper and an ETIRC officer, Daniel Bolotin, told Eclipse's Board that there was a high likelihood that funding would be approved by the Russian government in the coming days.  (Pls.' App. at A204.)  On February 16, Mr. Pieper and Mr. Bolotin confirmed that Russian Prime Minister Putin had given final approval for the financing and that no additional approvals were necessary.  (Pls.' App. at A213.)  ETIRC made many other such representations during the 60 day period.  In addition, ETIRC itself had already committed $20 million in DIP financing to Eclipse in anticipation of the sale closing.  (D.I. 230.)

The Plaintiffs respond that ETIRC had been unable to obtain funding from the Russian government for an earlier project, the commitment letters that ETIRC submitted did not appear to be binding, and no other qualified buyers had come forward in the sale process.  Based on these facts, the Plaintiffs argue that it was not reasonable for Eclipse to rely on ETIRC to fund an asset purchase.

The Court disagrees with the Plaintiffs' conclusion.  As the case law clarifies, "[i]n determining whether a crippling business circumstance is foreseeable, we must bear in mind that 'it is the probability of occurrence that makes a business circumstance reasonably foreseeable, rather than the mere

11

possibility of such a circumstance.'" <u>Roquet v. Arthur Andersen</u>
<u>LLP</u>, 398 F.3d 585, 589 (7th Cir. 2005) (quoting <u>Watson v. Mich.</u>
<u>Indus. Holdings, Inc.</u>, 311 F.3d 760, 765 (6th Cir. 2002)).

The Court does not find that it was probable that the sale
would fail; rather, there were continual assurances that it would
close.  In addition, rushing notice of a layoff can mean that
"employees may overestimate the risk of closing and prematurely
leave their employer, forfeiting (among other things), seniority
and unvested benefits." <u>Jevic Holding</u>, 496 B.R. at 163.  Such a
reaction by some employees can doom the proposed sale and result
in the loss of jobs for all.

Given the repeated assurances from ETIRC, the Court
concludes it was reasonable for Eclipse to believe that funding
would be forthcoming and the sale would close.  Even if layoffs
were foreseeable, the Court concludes that Eclipse was in no
position to predict a specific date or 14-day period when the
sale would fail and the layoffs would occur.

b.  <u>Causation</u>

The Plaintiffs argue that, even if the sale had consummated,
ETIRC was not obligated to retain Eclipse's employees and could
have terminated them anyway.  Therefore, they argue, the
termination of employees was not caused by the failure to close
on the sale.  The Court rejects this argument.

Eclipse sought to sell its business as a going concern.
Eclipse's work force was highly skilled and integral to the
business operations.  Two executive management committee members,
Mark Borseth and Michael McConnell, testified that they believed
ETIRC intended to retain Eclipse's workforce post-sale.  (Def.'s
Ex. 3 at 68:19-23; Def.'s Ex. 2 at 84:6-12.)  Indeed this Court
approved the sale in part because of the expectation that the
employees would keep their jobs.  (D.I. 450 at 106.)
Additionally, the buyer's contemplated annual budget for the
post-sale entity was $125 to $150 million, showing that ETIRC was
committed to continuing operations.  (D.I. 448 at 107.)  Although
the Amended APA stated that ETIRC had no hiring obligations, such
terms are boilerplate in going-concern sales and merely allow the
buyer to pick which employees to retain.  For these reasons, the
Court concludes that ETIRC's failure to consummate the sale was
the cause of the termination by Eclipse of its workforce.

       3.  <u>Sufficiency of Notice</u>

Because the unforeseen business circumstances defense
applies here, Eclipse was required to give as much notice of the
layoff as was practicable.  The Court holds that it did.  On
February 24, Eclipse's secured lenders moved to convert to a
chapter 7 liquidation.  Only then was it clear that there would
be no going-concern sale.  That same evening, management emailed
employees notice of the layoff.

In addition to the requirement that notice be sent as soon as practicable, the WARN Act prescribes certain content and delivery requirements.  Notice to employees should set forth specific facts explaining the reason for the reduced period of notice.  See In re Tweeter OPCO, LLC, 453 B.R. 534, 546-47 (Bankr. D. Del. 2011).  A proper WARN Act notice should also tell employees whether the planned action will be permanent or temporary, the expected date when the layoff will begin, when the individual employees will be separated, whether "bumping rights" exist, and the name and telephone number of a company official who can be contacted for further information.  The notice must be based on the best information available to the employer at the time the notice is served.  20 C.F.R. § 639.7.  Finally, delivery of the notice should ensure its receipt.  Id. at § 639.8.  The Court must consider whether the communications to employees, read together, satisfy the WARN Act.  Kalwaytis v. Preferred Meal Systems, Inc., 78 F.3d 117 (1996).

In this case, the February 18 email states that there will be a furlough because efforts to finalize a sale have been unexpectedly delayed.  The February 24 email announces that the sale will not close and that the furlough has been converted to a permanent layoff.  On February 25, Eclipse mailed a termination package to employees' home addresses.  From these communications, an employee would understand that she had been terminated and why

14

she did not receive earlier notice.  Aside from addressing
bumping rights, which are not applicable here, the Court
concludes that the notices contain the required content.

Finally, the Court need not determine whether, on its own, a
message sent to the workplace email of a furloughed employee
satisfies the WARN Act's delivery requirements.  Because Eclipse
both emailed employees and sent notice to their home addresses,
delivery was proper.


IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the
Trustee's motion for summary judgment and deny the Plaintiffs'
motion.

An appropriate Order is attached.


Dated: November 18, 2014          BY THE COURT:

                                  Mary F. Walrath
                                  United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| AE LIQUIDATION, INC., et al., | ) |
| | ) Case No. 08-13031 (MFW) |
| Debtors. | ) |
| | ) Jointly Administered |
| ANNETTE VARELA and JOHN J. DIMURA on behalf of themselves and all others similarly situated, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) Adv. No. 09-50265 (MFW) |
| | ) |
| | ) |
| ECLIPSE AVIATION CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**O R D E R**

**AND NOW**, this **18th** day of **November, 2014,** for the reasons set forth in this accompanying Memorandum Opinion, it is hereby

**ORDERED**, that the Trustee's motion for summary judgment is **GRANTED**; and it is furthered

**ORDERED**, that the Plaintiffs' Motion for summary judgment is **DENIED**.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Adam Singer, Esquire[3]

---

[3]   Counsel is to serve a copy of this Order and accompanying Memorandum Opinion on all interested parties and file a Certificate of Service with the Court.

**SERVICE LIST**

Adam Singer, Esquire
COOCH AND TAYLOR, P.A.
The Brandywine Building
1000 West Street, 10th Floor
P.O. Box 1680
Wilmington, DE 19899
Counsel for Trustee

Jack A. Raisner, Esquire
Rene S. Roupinian, Esquire
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY 10016
Counsel for Plaintiffs

Christopher D. Loizides, Esquire
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Counsel for Plaintiffs